UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL LEE JOHNSON, JR. and
ELIZABETH L. JACOBS,

    Plaintiffs,

vs.

Case No. 08-CV-10209
HON. GEORGE CARAM STEEH

COUNTY OF WAYNE,
SHERIFF EVANS, DEPUTY CHIEF LOSEN,
COMMANDER KNIGHT, COMMANDER JONES,
EXECUTIVE LIEUTENANT HEARD,
LIEUTENANT BERG, DEPUTY HARRIS,

    Defendants.

_____/

ORDER GRANTING DEFENDANTS' MOTION FOR DISMISSAL/
SUMMARY JUDGMENT (#8), AND DENYING DEFENDANTS' MOTION TO STRIKE
SUPPLEMENTAL BRIEF AND EXHIBIT (#15)

    Defendants Wayne County, Sheriff Evans, Deputy Losen, Commander Knight, Commander Jones, Executive Lieutenant Heard, Lieutenant Berg, and Deputy Harris move for dismissal or summary judgment of plaintiffs Earl Johnson's and Attorney Elizabeth Jacobs' 42 U.S.C. § 1983 claims that a Wayne County policy denying attorneys professional contact visits with Wayne County Jail inmates if they are not the inmate's attorney of record violates the inmate's Fifth Amendment right to counsel on direct appeal, the inmate's Sixth Amendment right to counsel at sentencing, the inmate's Fifth Amendment right of access to the courts, and the attorney's First Amendment right to free speech and political expression. A hearing on the motion was held on May 28, 2008. Plaintiffs filed a Supplemental Exhibit on June 3, 2008. Defendants moved to strike the Supplemental Exhibit on June 11, 2008. For the reasons set forth below, defendants'

motion to strike will be DENIED, and defendants' motion for dismissal or summary judgment will be GRANTED.

## I. Background

Plaintiff Elizabeth Jacobs is a lawyer licensed to practice law in Michigan. Plaintiff Earl Johnson was charged in 2005 with federal crimes of conspiracy, bank robbery, and murder related to the robbery of an armored car. Upon being charged, Johnson was remanded to the custody of the United States Marshall, and was transferred to the Wayne County Jail pending trial. Johnson was represented by Attorney James Feinberg at his criminal trial before Federal District Judge Victoria Roberts, and was convicted by a jury on all counts in November 2007.

Plaintiffs filed the instant lawsuit on January 15, 2008. Plaintiffs allege that, at the request of Johnson's parents, Attorney Jacobs agreed to visit Johnson at the Wayne County Jail in anticipation of representing Johnson on appeal. To that end, Jacobs appeared at the Wayne County Jail Annex on December 12, 2007 and presented her Michigan bar card, driver's license, and a professional visit form to defendant Deputy Harris indicating she, Jacobs, was to visit Johnson on floor number A611. Deputy Harris allegedly asked Jacobs if she was Johnson's attorney of record, to which Jacobs responded "no." Harris allegedly informed Jacobs that, because she was not the attorney of record, she could not have a professional contact visit with Johnson in a private contact cell, but instead would have to meet with Johnson in a non-contact visiting room where inmates and their visitors allegedly shout at each other through thick plastic windows. Deputy Harris' supervisor, defendant Lieutenant Berg, likewise told Jacobs she was not entitled to a professional contact visit pursuant to a Jail policy of allowing professional contact visits only to attorneys of record. Berg offered Jacobs a non-contact visit, and Jacobs declined. Jacobs attempted to challenge the policy through the Jail's chain-of-command, but neither

defendants Commander Jones nor Executive Lieutenant Heard were at the Jail Annex on December 12, 2007. Jacobs allegedly left the Jail and phoned Executive Lieutenant Heard, who reiterated the attorney of record contact visitation policy. Prompted by Jacobs, Heard allegedly explained that "some attorneys are relatives, some attorneys have other concerns, and some attorneys have passed contraband to an inmate." Plaintiffs' Response Brief, at 3. Heard allegedly told Jacobs that he would permit her to have a professional visit with Johnson only if Jacobs presented him with a judge's order. Unsatisfied with Heard's explanation and offer, Jacobs phoned defendant Wayne County Sheriff Evans. The call was forwarded to defendant Commander Knight's voice-mail. Several hours later, Executive Lieutenant Heard returned Jacobs' voice-mail message and reiterated the Jail visitation policy. Jacobs again called Sheriff Evans, and was told by Evans' secretary that defendant Deputy Chief Losen would return her call.

Deputy Chief Losen did not call Jacobs on December 12, 2007. The next day, December 13, 2007, Jacobs called Executive Lieutenant Heard and asked for a copy of the Jail visitation policy. Heard allegedly refused Jacobs's request, responding that the policy was "posted on the board." Jacobs explained to Heard that she needed a copy of the Jail visitation policy to present to Judge Roberts. Heard again offered Jacobs a non-contact visit. Jacobs declined the offer "explain[ing] that it was a complicated three count indictment for bank robbery and that she and Plaintiff Johnson needed privacy and that she needed a table upon which to take notes." Plaintiffs' Response Brief, at 4. After further discussion, Heard allegedly told Jacobs to "just get an order showing you are retained." Four days later, on December 17, 2007, Deputy Chief Losen called Jacobs and told her he would "dig out" a written copy of the Jail visitation policy. After Deputy Chief Losen realized that Johnson was a federal prisoner, however, he allegedly called the U.S. Marshall's Office to inquire as to their visitation policy, then told Jacobs she could have a professional

3

contact visit with Johnson. Executive Lieutenant Heard phoned Jacobs afterwards and arranged for a professional contact visit between Jacobs and Johnson on December 18, 2007. According to the plaintiffs, the visit lasted an hour and fifteen minutes. See Plaintiffs' Response Brief, at 5. Johnson retained Jacobs as his appellate counsel. Attorney Jacobs is still not listed as Johnson's attorney of record; Johnson was awaiting sentencing at the time of this court's May 28, 2008 hearing.

Plaintiffs further allege that non-party Brian McKinney was incarcerated in the Wayne County Jail on January 7, 2008 following state law drug convictions. McKinney allegedly asked Jacobs to make a professional contact visit. Jacobs alleges the Jail policy at issue prevents her from visiting McKinney.

As a general allegation, plaintiffs allege that "[t]he policy of denying professional visits to attorneys not of record deprives and will continue to deprive jail inmates of their constitutional right to consult with counsel and to have access to the courts." Complaint, ¶ 73, at 10. Count I alleges § 1983 liability premised on the denial of prisoner Johnson's Fifth Amendment right to counsel on direct appeal. Count II alleges § 1983 liability premised on the denial of Johnson's Sixth Amendment right to counsel in sentencing proceedings. Count III alleges § 1983 liability premised on the denial of Johnson's Fifth Amendment right of access to the courts. Count IV alleges § 1983 liability premised on the denial of Attorney Jacobs' First Amendment right to free speech and political expression. Defendants move for dismissal or summary judgment of each of these claims.

## II. Motion for Dismissal/Summary Judgment

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Under the Supreme Court's recent articulation of the Rule 12(b)(6) standard in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007), the court must construe the

complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion for dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Bell Atlantic, 127 S. Ct. at 1964-65) (citations and quotations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Id. (citing Bell Atlantic, 127 S. Ct. at 1965).

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario,

Ltd., 224 F.3d 797, 800 (6th Cir. 2000). To survive a motion for summary judgment, there must be evidence in the record on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

### A.  Prisoner Johnson's § 1983 Claims

### i. PLRA

As defendants argue, prisoner Johnson's claims as alleged in Counts I-III are subject to summary judgment under the Prison Litigation Reform Act (PLRA) of 1995, 42 U.S.C. § 1997e(a), for failure to exhaust administrative remedies. "There is no question that exhaustion is mandatory under the PLRA, and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 918-19 (2007). Lack of exhaustion is an affirmative defense. Id at 921. A prisoner's failure to comply with the PLRA's exhaustion requirement deprives a district court of the ability to address the merits of his claims. Id at 923.

Each of the Wayne County defendants have alleged failure to exhaust as an affirmative defense. Johnson does not deny failing to exhaust his administrative remedies. "Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter v. Nussle, 534 U.S. 516, 525 (2002). Following an internal investigation prompted by Attorney Jacobs, it is undisputed that Johnson was given a contact visit with Jacobs on December 18, 2007, six days after Jacobs first asked to visit with him on December 12, 2007. Johnson has not filed a grievance and, indeed, had no need to file a grievance after meeting with Attorney Jacobs on December 18, 2007, a little less than a month before filing this lawsuit on January 15, 2008.

Plaintiffs cite Lunsford v. Jumao-As, 155 F.3d 1178 (9th Cir. 1998), for the

6

proposition that Johnson was not required to exhaust his administrative remedies before filing this lawsuit. The Ninth Circuit panel in Lunsford held that exhaustion was not required where a prisoner sought only monetary damages in a Bivens action, and not prospective injunctive relief. In a lawsuit filed pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), damages may be obtained for injuries resulting from a violation of constitutional rights by federal officials. The PLRA applies to Bivens actions seeking monetary relief. Nussle, 534 U.S. at 524-25. The PLRA prevents a prisoner from filing a federal action seeking mental or emotional damages suffered in custody without a prior showing of physical injury. 42 U.S.C. § 1997e(e). In seeking monetary relief, Johnson does not allege he has suffered a requisite physical injury. Unlike the prisoner in Lunsford, Johnson seeks a declaratory judgement that the Wayne County Jail visitation policy is unconstitutional, along with an order enjoining the defendants from engaging "in such conduct" in the future. Complaint, at 17. Lunsford is distinguishable. Defendants are entitled to summary judgment of Johnson's § 1983 claims because it is beyond reasonable dispute on this record, consistent with the defendants' affirmative defense, that Johnson has failed to exhaust his administrative remedies. Bock, 549 U.S. at 918-19, 921, 923; Amway Distributors, 323 F.3d at 390. Defendants are entitled to the dismissal of Johnson's claims for monetary relief in the absence of factual allegations to raise above speculation that he suffered a physical injury as a result of the alleged constitutional violations. 42 U.S.C. § 1997e(e); Ass'n of Cleveland Fire Fighters, 502 F.3d at 548.

### ii. Merits

In the alternative, the court proceeds to address the merits of Johnson's § 1983 claims that he was denied access to appellate counsel in violation of the Fifth Amendment, denied access to counsel at sentencing in violation of the Sixth Amendment, and denied

access to the courts in violation of the Fifth Amendment. Without requiring exhaustion of administrative remedies, a court may dismiss an action if it is satisfied that the action fails to state a claim on which relief may be granted. See Pack v. Martin, 174 Fed. Appx. 256, 259 (6th Cir. Mar. 27, 2006).

The Fourteenth Amendment protects inmates from being denied meaningful access to the courts by the states. Lewis v. Casey, 518 U.S. 343, 350 (1996) (citing Bounds v. Smith, 430 U.S. 817, 821, 828 (1977)); Casey v. Lewis, 4 F.3d 1516, 1520 (9th Cir. 1993) (citing Bounds, 430 U.S. at 822). Contact attorney visitation has been recognized as falling within this right of meaningful access. Lewis, 4 F.3d at 1520. A prison regulation that infringes on an inmate's constitutional right is nonetheless constitutionally permissible if it "bear[s] a rational relation to legitimate penological interests." Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (citing Turner v. Safley, 482 U.S. 78, 89 (1987) and Pell v. Procunier, 417 U.S. 817, 822 (1974)). See also Lewis, 4 F.3d at 1520. An inmate alleging a denial of access to the courts must prove that he suffered an actual injury or harm. Casey, 518 U.S. at 349. An inmate may show actual harm by demonstrating that a denial of his access to the courts somehow prejudiced his rights in a lawsuit. Walker v. Mintzes, 771 F.2d 920, 932 (6th Cir. 1985) (quoting Twyman v. Crisp, 584 F.2d 352, 357 (10th Cir. 1978)).

Although incarcerated as a federal prisoner, Johnson's § 1983 claims are alleged against the state actor Wayne County defendants, and are thus governed by the Fourteenth Amendment. Johnson's claim that he was denied a Sixth Amendment right to the counsel of his choice at sentencing is premised on United States v. Gonzalez-Lopez, 548 U.S. 140 (2006). In Gonzalez-Lopez, the district court denied the criminal defendant's choice of paid trial counsel by erroneously denying counsel's petition under a local rule to appear pro hac vice. Id. at 142-144. The criminal defendant's chosen counsel was required to sit in the audience during trial, and was finally permitted to meet with the

defendant only on the last night of trial. Id. at 143. The Supreme Court reversed the criminal conviction on recognizing a Sixth Amendment "right of a defendant who does not require appointed counsel to choose who will represent him." Id. at 144. The Court held that, once the deprivation of trial counsel was found to be erroneous, no additional showing of prejudice was required. Id. at 145.

Johnson does not allege that he was denied representation by Attorney Feinberg at trial, or that he is in imminent danger of not being represented by Attorney Feinberg at sentencing or Attorney Jacobs on appeal. To the extent Johnson is alleging a Sixth Amendment claim, the claim fails as a matter of law because Johnson has not been deprived of his choice of counsel to represent him in District Court or the Sixth Circuit Court of Appeals. Ass'n of Cleveland Fire Fighters, 502 F.3d at 548. To the extent Johnson's claims of denial of access to appellate counsel, denial of access to counsel at sentencing, and denial of access to the courts properly allege Fourteenth Amendment claims pursuant to Bounds and its progeny, these claims also fail to state a claim on which relief may be granted in the absence of factual allegations sufficient to raise beyond the speculative level that Johnson suffered an actual injury or harm that prejudiced his rights in the criminal proceedings before Judge Roberts or anticipated proceedings on appeal. Id.; Casey, 518 U.S. at 349; Walker, 771 F.2d at 932. Defendants are entitled to the dismissal of Johnson's claims as alleged in Counts I, II, and III under Rule 12(b)(6) for failure to state a claim on which relief may be granted. Ass'n of Cleveland Fire Fighters, 502 F.3d at 548.

In the alternative, defendants are also entitled to summary judgment of Johnson's claims because the Wayne County Jail policy of allowing only attorneys of record to have contact visits with inmates bears a rational relationship to legitimate penological interests. Overton, 539 U.S. at 132; Amway Distributors, 323 F.3d at 390. Whether a jail regulation bears a rational relation to a legitimate penological interest involves a four factor analysis:

(1) whether the challenged prison regulation has a valid, rational connection to a legitimate government interest such as promoting internal security; (2) whether alternative means are open to inmates to exercise the asserted constitutional right; (3) the impact an accommodation of the right would have on guards, inmates, and prison resources; and (4) whether there are "ready alternatives" to the regulation. Overton, 539 U.S. at 132-133 (citing Turner, 482 U.S. at 89-91). As to "ready alternatives," "Turner does not impose a least-restrictive-alternative test, but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." Overton, 539 U.S. at 132-133 (citing Turner, 482 U.S. at 90-91).

Defendants have proffered a rational connection to excluding all but attorneys of record from having contact visits, that is, promoting internal security. See Affidavit of Wayne County Jail Divisions I & II Commander Paul Jones (attesting that: the policy was reevaluated and changed in 2006 after an attorney not of record was granted a contact visit and engaged in sexual acts with the inmate; and the policy eliminates added risks of harm to attorneys lacking an attorney-client relationship and meeting with an inmate housed in Division II as a violent offender for the first time in jail). Plaintiffs themselves allege Executive Lieutenant Heard explained that "some attorneys have passed contraband to an inmate." The court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton, 539 U.S. at 132. Johnson's argument that an attorney could have an attorney-client relationship with an inmate and not be the attorney of record does not render the policy irrational in promoting the Jail's internal security. The Wayne County defendants could rationally conclude that an attorney having an attorney-client relationship with an

inmate, but not the inmate's attorney of record, is more likely to be visiting an inmate for illegitimate purposes such as delivering contraband. Johnson's argument that he is entitled to greater freedoms because he was housed in a pre-trial detention area ignores Johnson's status during the relevant time period as a convicted felon. Defendants could rationally believe they may rely upon a counsels' representations, as they did here, in determining whether counsel is in fact the inmate's counsel of record.

Alternatives to contact visits are available to attorneys who are not an inmate's attorney of record, including non-contact visits, messages delivered through an attorney of record or family members, letters, and phone calls. It is undisputed that Attorney Jacobs was repeatedly offered non-contact visits with Johnson. Johnson's argument that non-contact visits are unacceptable because they do not provide sufficient privacy or amenities such as a desk and chair assumes that Johnson's right of reasonable access to the courts, as opposed to Attorney Jacobs' asserted rights, include interviewing potential representation in ideal conditions. While Johnson would certainly benefit from such an arrangement, all that is required of the Wayne County defendants is to present convicted inmates with reasonable access to potential counsel. See Casey, 518 U.S. at 350-51 (recognizing that the constitutional right of access to the courts requires only a "reasonable adequate opportunity" of access that may be accomplished by various means). It must be stressed here that counsel hired by an inmate who becomes the attorney of record in a pending criminal matter is entitled to a private contact visit. Johnson, again, was not a pre-trial detainee, but a convicted felon awaiting sentencing while represented by attorney of record James Feinberg. Johnson has not advanced an alternative to the Jail policy that fully accommodates his desire to interview potential appellate counsel only during contact visits, and imposes only a de minimis cost in resources upon the Wayne County Jail. The Wayne County defendants could reasonably conclude that such a policy could lead to

abuse and require additional staffing and contact cells. Defendants are entitled to summary judgment of Johnson's claims as alleged in Counts I, II, and III under Rule 56 because, construing the pleadings and evidence in a light most favorable to plaintiff Johnson, it is beyond reasonable dispute that the Wayne County Jail contact visitation policy is rationally related to legitimate penological interests. Overton, 539 U.S. at 132; Amway Distributors, 323 F.3d at 390.

### B. Attorney Jacobs § 1983 First Amendment Claim

Attorney Jacobs alleges her First Amendment rights as an attorney, of free speech and political expression, were violated when she was denied a contact visit with Johnson, and will be denied a contact visit with McKinney, on the basis that she was neither Johnson's nor McKinney's attorney of record. Jacobs cites without elaboration N.A.A.C.P. v. Button, 371 U.S. 415 (1963) to support her position that attorneys enjoy a First Amendment right to provide legal advice to prison inmates who seek them out. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." McPherson v. Kelsey, 125 F.3rd 989, 995-96 (6th Cir. 1997). Jacobs' mere invocation of Button fails to establish the First Amendment right she claims.

The Supreme Court in Button struck down on First Amendment over-breadth grounds a Virginia statute that made "any arrangement by which prospective litigants are advised to seek the assistance of particular attorneys" a criminal offense. Button, 371 U.S. at 434. "[M]embers of the NAACP urged Negroes aggrieved by the allegedly unconstitutional segregation of public schools in Virginia to exercise their legal rights and to retain members of the Association's legal staff." Id. at 437.

We conclude that under Chapter 33 [of the Virginia Acts of Assembly,

> 1956 Extra Session], as authoritatively construed by the [Virginia] Supreme Court of Appeals, a person who advises another that his legal rights have been infringed and refers him to a particular attorney or group of attorneys (for example, to the [NAACP] Virginia Conference's legal staff) for assistance has committed a crime, as has the attorney who knowingly renders assistance under such circumstances.  There thus inheres in the statute the gravest danger of smothering all discussion looking to the eventual institution of litigation on behalf of the rights of members of an unpopular minority.  Lawyers on the legal staff or even mere NAACP members or sympathizers would understandably hesitate, at an NAACP meeting or on any other occasion, to do what the decree purports to allow, namely, acquaint 'persons with what they believe to be their legal rights and * * * (advise) them to assert their rights by commencing or further prosecuting a suit * * *.'  For if the lawyers, members of sympathizers also appeared in or had any connection with any litigation supported with NAACP funds contributed under the provision of the decree by which the NAACP is not prohibited 'from contributing money to persons to assist them in commencing or further prosecuting such suits,' they plainly would risk (if lawyer disbarment proceedings and, lawyers and non-lawyers alike, criminal prosecution for the offense of 'solicitation,' to which the Virginia court gave so broad and uncertain meaning.  It makes no difference whether such prosecutions or proceedings would actually be commenced.  It is enough that a vague and broad statute lends itself to selective enforcement against unpopular causes.  We cannot close our eyes to the fact that the militant Negro civil rights movement has engendered the intense resentment and opposition to the politically dominant white community of Virginia; litigation assisted by the NAACP has been bitterly fought.  In such circumstances, a statute broadly curtailing group activity leading to litigation may easily become a weapon of oppression, however evenhanded its terms appear.  Its mere existence could well freeze out all activity on behalf of the civil rights of Negro citizens.

Id. at 434-36 (footnotes omitted).

In contrast to the circumstances in Button, the Wayne County Jail policy at issue does not criminalize or otherwise prevent attorneys who are not attorneys of record from advising Jail inmates that their legal rights have been infringed or that they should retain an attorney or group of attorneys who advocate a particular political position.  The policy could not reasonably be construed as "smothering all discussion" about a particular political topic, or so broad as to lend itself to selective enforcement against "unpopular" political causes.  Attorneys not of record are not precluded by the Jail policy from discussing any political topic with an inmate during a non-contact visit.  Defendants are entitled to dismissal

13

of Attorney Jacobs' First Amendment claim under Rule 12(b)(6) because the claim's factual allegations, assumed to be true, are insufficient to raise a right to relief under the First Amendment in the absence of supporting legal authority. Ass'n of Cleveland Fire Fighters, 502 F.3d at 548; McPherson, 125 F.3rd at 995-96.

### III. Motion to Strike Plaintiff's Supplemental Exhibit

Defendants move to strike as untimely Johnson's affidavit filed as a Supplemental Exhibit on June 3, 2008 wherein Johnson attests that he never received a handbook concerning the rules or regulations of the Wayne County Jail. The court has considered the affidavit in making its ruling. Defendants have not been unduly prejudiced by the filing of the supplemental brief. In the interests of developing a full record, defendants' motion to strike the supplemental brief will be denied.

### IV. Conclusion

Defendants are entitled to summary judgment of plaintiff Johnson's claims under Rule 56 for failure to exhaust administrative remedies. Defendants are entitled to dismissal of Johnson's claims for monetary damages under Rule 12(b)(6) in the absence of factual allegations which could support such relief under the PLRA. Alternatively, defendants are entitled to dismissal of Johnson's claims under Rule 12(b)(6) in the absence of factual allegations that could support a Sixth Amendment violation or a finding of an actual injury necessary to support a claim of denial of access to counsel or the courts under the Fourteenth Amendment. Alternatively, defendants are entitled to summary judgment of Johnson's claims under Rule 56 because, construing the pleadings and record evidence in a light most favorable to Johnson, reasonable persons could not dispute that the Wayne County Jail contact visitation policy bears a rational relationship to legitimate penological interests. Defendants are entitled to dismissal of Attorney Jacobs' claim pursuant to Rule 12(b)(6) in the absence of factual allegations and legal authority sufficient to support a First

Amendment claim. In light of the court's ruling that the defendants have not violated Johnson's or Jacobs' constitutional rights, the court declines to address the defendants' arguments that they are entitled to qualified immunity. Accordingly,

Defendants' motion for dismissal or summary judgment is hereby GRANTED. Plaintiffs' claims are hereby DISMISSED with prejudice in their entirety.

SO ORDERED.

Dated: September 16, 2008

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 16, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk